**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AL-HARAMAIN ISLAMIC
FOUNDATION, INC., an Oregon
Nonprofit Corporation; WENDELL
BELEW, a U.S. Citizen and Attorney
at Law; ASIM GHAFOOR, a U.S.
Citizen and Attorney at Law,
                    *Plaintiffs-Appellees*,

v.

BARACK H. OBAMA, President of the
United States, in his official capacity;
NATIONAL SECURITY AGENCY;
KEITH B. ALEXANDER, Director of
NSA, in his official capacity; OFFICE
OF FOREIGN ASSETS CONTROL, of the
U.S. Department of the Treasury;
ADAM J. SZUBIN, Director of OFAC,
in his official capacity; FEDERAL
BUREAU OF INVESTIGATION; ROBERT
S. MUELLER, III, Director of FBI, in
his official capacity,
                    *Defendants-Appellants*.

No. 11-15468

D.C. No.
3:07-cv-00109-
VRW

| | |
|---|---|
| AL-HARAMAIN ISLAMIC FOUNDATION, INC., an Oregon Nonprofit Corporation, *Plaintiff*, | No. 11-15535 |
| and | D.C. No. 3:07-cv-00109-VRW |
| WENDELL BELEW, a U.S. Citizen and Attorney at Law; ASIM GHAFOOR, a U.S. Citizen and Attorney at Law, *Plaintiffs-Appellants*, | AMENDED OPINION |
| v. | |
| BARACK H. OBAMA, President of the United States, in his official capacity; NATIONAL SECURITY AGENCY; KEITH B. ALEXANDER, Director of NSA, in his official capacity; OFFICE OF FOREIGN ASSETS CONTROL, of the U.S. Department of the Treasury; ADAM J. SZUBIN, Director of OFAC, in his official capacity; FEDERAL BUREAU OF INVESTIGATION; ROBERT S. MUELLER, III, Director of FBI, in his official capacity, *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding

Argued and Submitted
June 1, 2012—Pasadena, California

Filed August 7, 2012
Amended December 5, 2012

Before: Harry Pregerson, Michael Daly Hawkins,
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY[*]

### Sovereign Immunity /
### Foreign Intelligence Surveillance Act

The panel affirmed in part and reversed in part the district court's judgment in favor of Al-Haramain Islamic Foundation, Inc. and individual plaintiffs in cases related to the United States government's Terrorist Surveillance Program.  On remand from this court, the district court held that the Foreign Intelligence Surveillance Act ("FISA") preempted or displaced the state secrets privilege, that the government implicitly waived sovereign immunity for damages under FISA's civil liability provision, 50 U.S.C. § 1810, and that two of the Al-Haramain plaintiffs were entitled to statutory damages and attorneys' fees.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that there was no explicit waiver of the United States' sovereign immunity, and reversed the district court's determination that § 1810 of FISA waived sovereign immunity. As a consequence, the panel vacated the judgment in favor of Al-Haramain, including the judgment for liquidated damages, attorneys' fees, and costs. The panel affirmed the district court's dismissal of claims against FBI Director Mueller in his individual capacity.

**COUNSEL**

Douglas N. Letter, United States Department of Justice, Civil Division, Washington, D.C., for Defendants-Appellants/Cross-Appellees.

Jon B. Eisenberg, Eisenberg and Hancock, Oakland, California, for Plaintiffs-Appellees, Cross-Appellants.

Richard A. Samp, Washington Legal Foundation, Washington, D.C., for Amici Curiae James J. Carey, Norman T. Saunders, Thomas L. Hemingway, Washington Legal Foundation, Allied Educational Foundation, and The National Defense Committee.

Cindy A. Cohn, Electronic Frontier Foundation, San Francisco, California, for Amici Curiae The Electronic Frontier Foundation, The Government Accountability Project, James Bamford, and Former Intelligence, National Security and Military Professionals.

**OPINION**

McKEOWN, Circuit Judge:

This case, which comes before us a second time, is one of many related to the United States government's Terrorist Surveillance Program, a program that "intercepted international communications into and out of the United States of persons alleged to have ties to Al Qaeda and other terrorist networks." *Al-Haramain Islamic Found. v. Bush* ("*Al-Haramain I*"), 507 F.3d 1190, 1192 (9th Cir. 2007). In the previous appeal, we determined that "the state secrets privilege d[id] not bar the very subject matter of th[e] action" and remanded to the district court to consider, among other issues, whether the Foreign Intelligence Surveillance Act (FISA) preempts the state secrets privilege. *Id.* at 1193. On remand, the district court held that FISA preempts or displaces the state secrets privilege, that the government implicitly waived sovereign immunity for damages under FISA's civil liability provision, 50 U.S.C. § 1810, and that two of the Al-Haramain plaintiffs were entitled to statutory damages and attorney's fees.

The threshold issue in this appeal is whether the district court erred in predicating the United States' liability for money damages on an implied waiver of sovereign immunity under § 1810. It is well understood that any waiver of sovereign immunity must be unequivocally expressed. Section 1810 does not include an explicit waiver of immunity, nor is it appropriate to imply such a waiver. Consequently, we reverse the district court's judgment awarding damages and attorney's fees to Al-Haramain under § 1810. We also affirm

the dismissal of Robert Mueller, Director of the FBI, in his personal capacity.

This case effectively brings to an end the plaintiffs' ongoing attempts to hold the Executive Branch responsible for intercepting telephone conversations without judicial authorization. However, we cannot let that occur without comment on the government's recent, unfortunate argument that the plaintiffs have somehow engaged in "game-playing."

In early 2004, the Treasury Department announced an investigation of Al-Haramain Islamic Foundation, Inc. Then in late 2004, for the first time publicly alleged links to terrorism involving Al-Haramain. Also in 2004, the plaintiffs received a copy of a document from the Office of Foreign Assets Control (the "Sealed Document"), which may or may not have suggested certain of the plaintiffs or their lawyers had been electronically surveilled. In 2005, a *New York Times* article revealed that the National Security Agency "had obtained the cooperation of telecommunications companies to tap into a significant portion of the companies' telephone and e-mail traffic, both domestic and international."[1] Based on some or all of the above, the plaintiffs thought that they had been unlawfully surveilled, and in 2006 they filed suit.

Over the last six years, the plaintiffs have faced a moving and shrinking target. In 2008, Congress narrowed the list of potential defendants by granting telecommunications providers retroactive immunity. *See In re Nat'l Sec. Agency Telecomms. Records Litig.*, 671 F.3d 881, 891–93 (9th Cir.

---

[1] James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005, at A1.

2011) (describing 2008 amendments to FISA). Meanwhile, the evidentiary arsenal at the plaintiffs' disposal has been constantly in flux. On one hand, the Sealed Document was excluded, pending a determination whether the FISA preempted the State Secrets privilege in the telecommunications field. *See Al-Haramin I*, 507 F.3d 1190. On the other, the public evidence favorable to the plaintiffs grew to include the FBI admitting to having used surveillance in connection with its investigation of Al-Haramain, the Treasury Department acknowledging it intercepted 2003 telephone conversations involving an Al-Haramain member, and top Executive Branch officials testifying before Congress that most modern international communications are wired.

In light of the complex, ever-evolving nature of this litigation, and considering the significant infringement on individual liberties that would occur if the Executive Branch were to disregard congressionally-mandated procedures for obtaining judicial authorization of international wiretaps, the charge of "game-playing" lobbed by the government is as careless as it is inaccurate. Throughout, the plaintiffs have proposed ways of advancing their lawsuit without jeopardizing national security, ultimately going so far as to disclaim any reliance whatsoever on the Sealed Document. That their suit has ultimately failed does not in any way call into question the integrity with which they pursued it.

## BACKGROUND

## I. AL-HARAMAIN I

In *Al-Haramain I*, Al-Haramain Islamic Foundation and two of its lawyers (collectively "Al-Haramain") "claimed that

they were subject to warrantless electronic surveillance in 2004 in violation of the Foreign Intelligence Surveillance Act." 507 F.3d at 1193. At the core of the allegations stood "a classified 'Top Secret' document (the 'Sealed Document') that the government inadvertently gave to [the Al-Haramain organization] in 2004 during a proceeding to freeze the organization's assets." *Id.*

We held that the suit itself was not precluded by the state secrets privilege, although the privilege protected the Sealed Document. *Id.* Without the Sealed Document, the Al-Haramain organization could not establish that it suffered injury-in-fact and therefore did not have standing to bring suit. *Id.* at 1205. As to the attorney plaintiffs, we remanded to the district court to consider whether "FISA preempts the common law state secrets privilege." *Id.* at 1193.

## II. DISTRICT COURT PROCEEDINGS ON REMAND

On remand, the district court held extensive proceedings and issued multiple orders on the various remaining legal issues, including three published decisions. At the outset, the district court held that "FISA preempts or displaces the state secrets privilege . . . in cases within the reach of its provisions." *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 564 F. Supp. 2d 1109, 1124 (N.D. Cal. 2008). "This," the district court wrote, "is such a case." *Id.*

Concluding that § 1810 waives the United States' sovereign immunity, the district court denied the government's motion to dismiss for lack of jurisdiction. *Id.* at 1125. The court acknowledged that "[i]t is, of course true that section 1810 does not contain a waiver of sovereign immunity

analogous to that in 18 U.S.C. section 2712(a) which expressly provides that the aggrieved persons may sue the United States for unlawful surveillance . . . ." *Id.* However, because "it is only such [federal] officers and employees acting in their official capacities that would engage in surveillance of the type contemplated by FISA," the court feared that FISA would offer "scant, if any, relief" in the absence of a waiver. *Id.* Thus, it held that a waiver was "[i]mplicit in the remedy" under § 1810. *Id.*

In light of the Sealed Document, the court ruled it was necessary for the Al-Haramain plaintiffs to establish they were "aggrieved parties" under FISA using non-classified information. The district court dismissed the complaint with leave to amend the FISA claims, and Al-Haramain filed an amended complaint. The district court then concluded that "[w]ithout a doubt" the amended complaint "alleged enough to plead 'aggrieved person' status so as to proceed to the next step in proceedings under FISA's sections 1806(f) and 1810." *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 595 F. Supp. 2d 1077, 1086 (N.D. Cal. 2009). Moving to the merits, in its next ruling, "the court directed plaintiffs to move for summary judgment on their FISA claim relying only on non-classified evidence." *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 700 F. Supp. 2d 1182, 1192 (N.D. Cal. 2010). Al-Haramain did so and the government filed a cross-motion to dismiss and for summary judgment. The court denied the government's motion to dismiss for lack of jurisdiction, rejecting the argument that Al-Haramain lacked standing because the program under which it was surveilled had been terminated, and once again holding that § 1810 waived the United States' sovereign immunity. *Id.* at 1192–93.

On the merits, the district court granted summary judgment in favor of Al-Haramain with respect to governmental liability under FISA. *Id.* at 1202. Al-Haramain then accepted the court's invitation to voluntarily dismiss the remaining claims "in order to take the steps necessary for the entry of judgment on the FISA claim." *Id.* at 1203. The district court also dismissed claims against FBI Director Robert Mueller in his individual capacity. *Id.*

In a follow-up order on remedies, the court first denied damages to the Al-Haramain organization because it was a "foreign power or an agent of a foreign power" under FISA's broad definition of that term, and therefore ineligible to recover damages under the statute. 50 U.S.C. § 1810. The two individual plaintiffs did not seek actual damages but were awarded liquidated damages of $20,400 each. The district court denied punitive damages and equitable relief. Finally, the court awarded the requested $2,515,387.09 in attorney's fees and $22,012.36 in costs. *See* 50 U.S.C. § 1810.

## ANALYSIS

## I.  SOVEREIGN IMMUNITY

The key and dispositive issue on appeal is whether the government waived sovereign immunity under FISA's civil liability provision,[2] 50 U.S.C. § 1810. Contrary to the district

---

[2] "[S]overeign immunity is a limitation on the district court's subject matter jurisdiction." *Adam v. Norton*, 636 F.3d 1190, 1192 n.2 (9th Cir. 2011). In light of our decision on sovereign immunity, we need not address the constitutional and prudential standing issues, nor the question of statutory standing, namely whether Al-Haramain meets the

court's reliance on implied waiver, "[a] waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotation marks omitted).

We have the benefit of the Supreme Court's most recent pronouncement in this area. Earlier this year, the Court interpreted the waiver provision of the Privacy Act of 1974, which, like FISA, protects individuals against the government's collection, use, and disclosure of information. *FAA v. Cooper*, 132 S. Ct. 1441, 1448 (2012). According to the Privacy Act, "the United States shall be liable to [an] individual in an amount equal to the sum of . . . actual damages." 5 U.S.C. § 552a(g)(4)(A). In determining that the *scope* of the immunity waiver "[did] not unequivocally authorize an award of damages for mental or emotional distress," *Cooper*, 132 S. Ct. at 1456, the Court reiterated the standard for sovereign immunity: "What we thus require is that the scope of Congress' waiver be clearly discernable from the statutory text in light of traditional interpretive tools. If it is not, then we take the interpretation most favorable to the Government." *Id.* at 1448.

In light of these principles we now consider § 1810, which was the basis on which the district court ordered relief and the section relied on by Al-Haramain. At oral argument, Al-Haramain confirmed that it was not proceeding under other sections of FISA. Al-Haramain argues that, as a result of

---

"aggrieved person" requirement of 50 U.S.C. § 1810. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (A "federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (internal quotation marks omitted)).

purported illegal surveillance, it may bring a claim against the
United States under § 1810, which states:

> An aggrieved person, . . . who has been
> subjected to an electronic surveillance or about
> whom information obtained by electronic
> surveillance of such person has been disclosed
> or used in violation of section 1809 of this title
> shall have a cause of action against any person
> who committed such violation . . . .

A "person" who may have committed the violation is defined
as "any individual, including any officer or employee of the
Federal Government, or any group, entity, association,
corporation, or foreign power."    50 U.S.C. § 1801(m).
Glaringly missing from the definition is the "United States."
An offense under § 1810 is predicated on a violation of
§ 1809, a criminal provision, which provides that:

> (a) A person is guilty of an offense if he
> intentionally
>
> (1) engages in electronic surveillance . . .
> except as authorized by . . . any express
> statutory authorization . . .
>
> (2) discloses or uses information obtained
> under color of law by electronic surveillance,
> knowing or having reason to know that the
> information was obtained through electronic
> surveillance not authorized by . . . express
> statutory authorization . . . .

. . .

(d) There is Federal jurisdiction . . . if the person committing the offense was an officer or employee of the United States at the time the offense was committed.

In considering whether § 1810 encompasses a waiver of sovereign immunity, it is useful to benchmark the statutory language against other explicit waivers of sovereign immunity. The Federal Tort Claims Act provides the most prominent example: "The United States [is] liable . . . in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674(b).  However, Congress has used similarly explicit waiver provisions in other contexts. *See, e.g.*, 42 U.S.C. § 2000e-5(k) ("In any action or proceeding under this subchapter . . . the United States shall be liable for costs the same as a private person.") (unlawful employment practices); 46 U.S.C. § 30903(a) ("[A] civil action in admiralty in personam may be brought against the United States."); 26 U.S.C. § 7433(a) ("If . . . any officer or employee of the Internal Revenue Service . . . disregards any provision of this title . . . [a] taxpayer may bring a civil action for damages against the United States.").

We need not comb the United States Code for disparate examples of sovereign immunity waivers; such examples are available closer to home within FISA.  Congress included explicit waivers with respect to certain sections of FISA as part of the USA PATRIOT Act, 18 U.S.C. § 2712(a), which states in relevant part:

> Any person who is aggrieved by any willful
> violation of . . . sections 106(a), 305(a), or
> 405(a) of the Foreign Intelligence Surveillance
> Act of 1978 (50 U.S.C. 1801 et seq.) may
> commence an action in United States District
> Court against the United States to recover
> money damages.[3]

This section underscores the importance of considering the statutory scheme as a whole. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation marks omitted)). Congress well understood how to express a sovereign immunity waiver in the context of FISA. Admittedly, magic words, such as "an action against the United States," are not required to deduce a waiver of sovereign immunity. In certain circumstances, the Supreme Court has determined the existence of a waiver, by using "the other traditional tools of statutory construction." *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 589 (2008). Nonetheless, contrasted against other provisions deemed sufficient to invoke waiver, the lack of an explicit waiver in § 1810 is stark, permitting suit only against a "person," without listing the "United States." Just as the term

---

[3] These sections of FISA correspond to 50 U.S.C. § 1806(a) ("Information acquired from an electronic surveillance . . . may be used and disclosed by Federal officers and employees . . . only in accordance with the minimization procedures required by this subchapter."); § 1825(a) (information acquired as a result of a physical search); § 1845(a) (information collected through "the use of a pen register or trap and trace device").

"damages" was deemed ambiguous and thus limited sovereign immunity under the Privacy Act, *Cooper*, 132 S. Ct at 1456, so too is the term "person" ambiguous vis-a-vis governmental liability.  Because there "is a plausible interpretation of the statute that would not allow money damages against the government," any ambiguity is construed "in favor of the sovereign." *Id.* at 1444, 1448.

Although our decision is grounded solely in the text of the statute itself, the legislative history surrounding 18 U.S.C. § 2712(a) further "confirms what we have concluded from the text alone." *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1710 (2012); *see Levin v. United States*, 663 F.3d 1059, 1063 (9th Cir. 2011) (considering legislative history to confirm that the Gonzales Act does not waive sovereign immunity). Because FISA did not, on its own terms, waive sovereign immunity, an initial version of the PATRIOT Act proposed a sovereign immunity waiver for violations of § 1810. *See* H.R. Rep. No. 107-236, at 12–13, 42 (2001) (proposing to amend § 1810 to provide a remedy for its violation under the Federal Tort Claims Act).  This proposed amendment to § 1810 was deleted the very next day; instead, a waiver of sovereign immunity was incorporated into 18 U.S.C. § 2712.  While § 2712 creates United States liability for certain FISA violations such as those of 50 U.S.C. § 1806, it does not include claims under § 1810.[4]   Thus, our conclusion is consistent with congressional consideration and later rejection of an immunity waiver for violations of § 1810.

---

[4] Al-Haramain argues that since 50 U.S.C. § 1810, unlike 18 U.S.C. § 2520, does not specifically state that the United States is exempt from suit, immunity is waived.  This improperly turns the presumption against waiver on its head.

Contrasting § 1810 liability, for which sovereign immunity is not explicitly waived, with § 1806 liability, for which it is, also illuminates congressional purpose. Liability under the two sections, while similar in its reach, is not identical. Section 1806, combined with 18 U.S.C. § 2712, renders the United States liable only for the "use[] and disclos[ure]" of information "by Federal officers and employees" in an unlawful manner. Section 1810, by contrast, also creates liability for the actual collection of the information in the first place, targeting "electronic surveillance *or . . .* disclos[ure] or use[]" of that information. (emphasis added). Under this scheme, Al-Haramain can bring a suit for damages against the United States for *use* of the collected information, but cannot bring suit against the government for collection of the information itself. *Cf. ACLU v. NSA*, 493 F.3d 644, 671 (6th Cir. 2007) (Lead Opinion of Batchelder, J.) (noting that FISA potentially allows limitless information collection upon issuance of warrant, but limits use and dissemination of information under, *inter alia*, § 1806(a)). Although such a structure may seem anomalous and even unfair, the policy judgment is one for Congress, not the courts. Also, because governmental liability remains under § 1806, the district court's concern that FISA relief would become a dead letter is not valid. *See In re Nat'l Sec. Agency Telecomms. Records Litig.*, 564 F. Supp. 2d at 1125.

Consistent with the congressional scheme, unlike 50 U.S.C. §§ 1806, 1825 and 1845, § 1810 has not been incorporated into the waiver of sovereign immunity in 18 U.S.C. § 2712, or elsewhere. It would be anomalous to the point of absurdity for Congress, on one hand, to carefully and explicitly waive sovereign immunity with respect to certain FISA sections and then, on the other, cavalierly imply

a sovereign immunity waiver with respect to § 1810 by rendering liable any "person."

Al-Haramain reads volumes into the definition of a "person." Section 1801(m) defines "person" to mean "any individual, including any officer or employee of the Federal Government." That section is then incorporated into § 1810, which renders "any person" subject to suit for unlawful surveillance. Although the government urges that "person" applies to federal employees in only their personal capacities, Al-Haramain argues that if § 1801 stripped federal employees of immunity in only their personal capacities, it would be redundant: the term "individual" already covers employees in their personal capacities. Therefore, according to Al-Haramain, § 1801's reference to federal employees must target employees in their official capacities for money damages, which is tantamount to a waiver of sovereign immunity.

Al-Haramain's interpretation of the term "person" is problematic both in the context of § 1810 and the statute as a whole. Subsection 1801(m) is a definitional provision, in which "person" is defined to include both "individuals" and, more specifically, "employees and officers of the Federal Government." The provision does not impose liability on its own terms, and is therefore not concerned with personal versus official liability. That this definitional phrase is not directed to the individual's capacity becomes clear when looking at the statute as a whole. The term "person" is used in multiple locations within FISA to refer to a multitude of entities: potential plaintiffs, defendants, and even third parties. Inserting that definition in various appropriate subsections demonstrates that the definitional section is not targeted to the

issue of personal versus official capacity, nor can such capacity be inferred. For example, § 1802(a)(1)(B), which speaks to surveillance without a warrant, excludes "communications to which a United States person is a party." Applications for court orders reference "the persons, facilities, or places specified on the application." 50 U.S.C. § 1804(a)(4). In certain situations the Attorney General must consider the "threat of death or serious bodily harm to any person." *Id.* § 1806(i). Similarly, the term is used throughout in reference to "aggrieved person." *See, e.g.,* § 1806(d); § 1810.

Thus, Al-Haramain's redundancy argument cannot seriously be that, as to sovereign immunity, the government's interpretation would render the text of § 1801(m) redundant in its own right; rather, the claim is that the text of § 1801(m) *becomes* redundant when incorporated into § 1810. Al-Haramain would therefore require Congress to foresee and prevent redundancy upon *incorporation* of § 1801, a general definitional section, into § 1810. In light of the multitudinous contexts in which the term "person" is used, this turducken approach takes the presumption against redundancy too far.

If Congress shared Al-Haramain's aversion to the potential redundancy of the term "employees and officers of the federal government," its behavior with respect to other sections of the statute is inexplicable. Section 1806 directly addresses the actions of "Federal officers or employees" without the intercession of § 1801(m). Nonetheless, 18 U.S.C. § 2712 is not content with providing only a cause of action under § 1806; rather, it *also* and *explicitly* waives sovereign immunity. This structure strongly points to the conclusion that the reference to "Federal officers or employees" in

§ 1806—and certainly in § 1810 via § 1801(m)—does not, by itself, waive sovereign immunity.[5]

Apart from the absence of an explicit grant of sovereign immunity and the stark contrast between § 1810 and other FISA provisions, the relationship between § 1809 and § 1810 further supports our conclusion. Section 1810 liability is premised upon a "violation of section 1809." In turn, a violation of § 1809 is a criminal offense, and occurs when "[a] person intentionally . . . engages in electronic surveillance under color of law" in a manner that violates certain statutory provisions.

In other words, to be liable under § 1809 and § 1810, a "person" must be subject to criminal prosecution. Accordingly, to accept Al-Haramain's argument that § 1810 allows proceeding against a government employee in his official capacity, we must also suppose that a criminal prosecution may be maintained against an office, rather than an individual, under § 1809. This is unprecedented. We do not deny, as Al-Haramain argues, that there is precedent for prosecuting employees as *individuals* for actions taken in their

---

[5] Al-Haramain also notes that courts have inferred a sovereign immunity waiver in Title VII because the statute renders department heads liable; it contends that the reference to federal employees in FISA is analogous to Title VII's reference to heads of departments. *Brown v. General Services Administration*, upon which Al-Haramain relies, concerns administrative exhaustion requirements and does not address sovereign immunity. 425 U.S. 820, 831-33 (1976). Later Supreme Court precedent directly undermines Al-Haramain's argument. *See Lane v. Peña*, 518 U.S. 187, 193–95 (1996) (declining to read a liability provision pertaining to "Federal provider[s] of . . . assistance" as broadly waiving governmental immunity).

official capacities. *See generally Maryland v. Soper*, 270 U.S. 9 (1926); *Tennessee v. Davis*, 100 U.S. 257 (1879); Seth P. Waxman & Trevor W. Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 Yale L.J. 2195 (2003). However, imposing criminal penalties against an office for actions of the officeholder is a different ball game: just as an officeholder is nominally replaced by his successor in a civil "official capacity suit" as a defendant, under Al-Haramain's interpretation, a successor in office could be *criminally* prosecuted for actions of his predecessor. Such an approach is "patently absurd." *United States v. Singleton*, 165 F.3d 1297, 1299–1300 (10th Cir. 1999) (statute criminalizing the offer of a reward in exchange for testimony could not extend to the United States or an employee in her official capacity). Therefore, we do not interpret the reference to "person" in § 1810 to mean that a government employee is liable in his official capacity. *See also United States v. Cooper Corp.*, 312 U.S. 600, 604 (1941) (noting in a criminal antitrust action that "in common usage, the term 'person' does not include the sovereign").

Congress can and did waive sovereign immunity with respect to violations for which it wished to render the United States liable. It deliberately did not waive immunity with respect to § 1810, and the district court erred by imputing an implied waiver. Al Haramain's suit for damages against the United States may not proceed under § 1810.

## II. PERSONAL LIABILITY OF FBI DIRECTOR MUELLER

During the many years this case was litigated in the district court, Al-Haramain's suit against FBI Director Mueller in his individual capacity was nothing more than a sideshow,

overshadowed by the core claims against the government. Al-Haramain never vigorously pursued its claims against Mueller. Rather, in a hearing at the district court, Al-Haramain emphasized that "we believe Mr. Mueller is a corollary we needn't get to." *In re Nat'l Sec. Agency Telecomms. Records Litig.,* 700 F. Supp. 2d at 1203. When the district court finally reached the issue of Mueller's individual liability, it noted that Mueller was "the only defendant against whom plaintiffs seek to proceed in an individual capacity." *Id.* The district court then dismissed, without leave to amend, all claims against Mueller in his individual capacity because "the nature of the wrongdoing by governmental actors alleged and established herein is official rather than individual or personal." *Id.*

Al-Haramain's bare-bones allegations against Mueller are insufficient to survive summary judgment. The allegations, in their entirety, consist of two simple statements: Mueller "threatened to resign because of concerns about the legality of the warrantless surveillance program;" and "Mueller testified before the House Judiciary Committee that in 2004 the FBI, under his direction, undertook activity using information produced by the NSA through the warrantless surveillance program." These allegations do not appropriately allege a claim under FISA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotations and citations omitted)). Al-Haramain's allegations against Mueller are significantly less concrete than those found insufficient in *Iqbal*. *See id.* at 680-81. The district court recognized that Al-Haramain could not bring forth additional allegations that might breathe life into the otherwise deficient claim against Mueller. On appeal,

Al-Haramain does nothing to dispel that conclusion. The district court did not abuse its discretion in dismissing the claims against Mueller without leave to amend.

## CONCLUSION

Because there is no explicit waiver of sovereign immunity, we reverse the district court's determination that § 1810 waives sovereign immunity. As a consequence, we vacate the judgment in favor of Al-Haramain, including the judgment for liquidated damages, attorney's fees, and costs. We affirm the dismissal of claims against Mueller in his individual capacity.

**AFFIRMED IN PART, REVERSED IN PART, AND JUDGMENT VACATED.** The parties shall bear their own costs on appeal.